JOE REDMON, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

33 N. W. 2d 349

Filed July 16, 1948. No. 32412.

*Carl E. Sanden* and *E. J. Jackson,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

In a prosecution by the State in the district court for Lancaster County, the defendant was convicted of sodomy and sentenced to the penitentiary for a period of not less than fifteen years. Defendant brought the case to this court by petition in error.

The evidence discloses that the defendant was 33 years of age and a married man, with one child by his first wife and one born to his second wife before the trial, and that his family were living with his wife's father on a farm in Seward County.

The prosecutrix testified that she would be 23 years old in a week; that she was then working in a laundry; and that she lived with her parents, but was not working on May 22, 1947, when the alleged crime took place.

She testified that she married a soldier in 1940, when she was 16 years old; that she had two children, one being nearly three years old and the other one eleven months; and that she had separated from her husband about two years before, although he had returned on occasions for a short time, but she was not divorced from him.

The sordid details of the alleged offense, as shown in the bill of exceptions, need not be discussed.

The entire assignments of error on the part of the defendant consist of the two sentences: (1) "The trial court abused its discretion and prevented the defendant from having a fair trial by sustaining objections to questions asked the prosecutrix on cross-examination and thus excluding evidence that the prosecutrix had many sexual relations with other men." (2) "The sentence imposed by the court is excessive."

The first proposition of law advanced by defendant as a ground for reversal is: "In prosecutions for sexual crimes, for the purpose of reflecting on the credibility of the prosecutrix, she may be cross-examined to show she is accustomed to having promiscuous sexual relations."

We have examined all of the many citations of the defendant in support of this proposition and have found many others along the same line. One of the earliest opinions was that in New York of People v. Abbot, 19 Wend. 192, in which it was held "that the general character of the prosecutrix as a common prostitute may be shown; and that the prisoner is not restricted to proof of her general character for truth and veracity, but may give evidence of her general moral character."

The admissibility of evidence of particular acts of unchastity has been criticized, but has been constantly gaining support. See State v. Patterson, 88 Mo. 88, 57 Am. R. 374.

While the crime alleged in the instant case is sodomy, we find few cases thereon, and believe that the same

rule governing the admission of such evidence in rape cases is applicable. We find many rape cases holding it was error to refuse to allow the accused to prove the general reputation of the prosecutrix as a common prostitute, if he could do so, as indicating whether she consented to the act charged, and not merely for the sole purpose of impeaching her credibility. See, Campbell v. State, 147 Tex. Cr. 192, 179 S. W. 2d 547; Graham v. State, 125 Tex. Cr. 210, 67 S. W. 2d 296.

In the brief of defendant, several rulings are specifically pointed out similar to this one. Prosecutrix testified that she lived with her husband off and on; that he leaves Lincoln and stays away, then comes back for short intervals; and she admitted they had family arguments.

Repeatedly during the long cross-examination of the prosecutrix, the defendant attempted in various ways to put in evidence before the jury that the moral character of the prosecutrix was bad. The county attorney met each of these attempts with various forms of objections, generally to the effect that it was improper cross-examination, incompetent, irrelevant, and immaterial, and not tending to either prove or disprove the issues in the case, and no longer an attempt to test the credibility of the prosecutrix, but to get evidence and facts in the minds of the jury theretofore kept out by the court.

The court in repeated rulings held that the purpose of such inquiries was not confined to testing the credibility of the witness, and such objections were therefore sustained in each instance that we can find.

In answer to the defendant's argument and authorities cited, the Attorney General's brief affirms that "Evidence of general reputation that a female witness is, or has been, not law-abiding, unchaste, or a prostitute, is inadmissible for the purpose of impeaching the witness either upon cross-examination or by way of rebuttal; nor can these facts be shown for the purpose of impeach-

ment by evidence as to specific acts or instances."

He supports this by the case of Daggett v. State, 114 Neb. 238, 206 N. W. 735. In that opinion it is said: "The state, during the course of the trial, in cross-examination and also by the introduction of evidence in rebuttal, sought to impeach two female witnesses, whose evidence was given in behalf of the defendant, by proving them immoral, unchaste, and prostitutes. * * * These attempts on the part of the prosecution were wholly unwarranted by law and highly prejudicial to the defendant."

In our opinion, this Nebraska case does not support the rulings of the trial court in the case at bar, for it is discussing and deciding the proper limits on the cross-examination of two witnesses. The rule in regard to the cross-examination of a prosecuting witness is not so limited. See, State v. Rivers, 82 Conn. 454, 74 A. 757; 44 Am. Jur., Rape, § 97, p. 964; Annotation, 65 A. L. R. 426; Annotation, 140 A. L. R. 364; Rowe v. State, 155 Ark. 419, 244 S. W. 463; McGehee v. State, 162 Ark. 560, 258 S. W. 358.

Dean Wigmore says in regard to such evidence: "There is, however, at least one situation in which chastity may have a direct connection with veracity, viz. when a *woman or young girl testifies* as complainant against a man charged with a sexual crime, — *rape, rape under age, seduction, assault.* Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary physiological or emotional conditions. One form taken by these complexes is that of contriving false charges of sexual offences by men. The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine

or the victim." 3 Wigmore on Evidence (3d ed.), § 924a, p. 459.

Dean Wigmore's discussion is in line with a case back in 1867, in which it was said: "The defense * * * usually rests mainly on circumstances, and the cross-examination of the party who complains that she has been forced. Such cross-examination should, therefore, be allowed to be as unrestrained and searching, as is consistent with the rules of law." State v. Reed, 39 Vt. 417, 94 Am. Dec. 337.

We find it is well established by the later opinions of the courts of many states that evidence of the character of the prosecutrix is admissible and it is prejudicial error to exclude evidence which tends to show prior unchaste acts with other men. Such evidence can be weighed by the jury in deciding the weight and credibility to which her evidence is entitled. See, Jones v. Commonwealth, 154 Ky. 640, 157 S. W. 1079; Johnson v. State, 182 P. 2d (Okla. Cr.) 777.

" 'But equally well established is the principle that where the defendant is charged with the crime of rape * * *, accomplished by means of force or violence, it is error to exclude evidence which tends to show prior unchaste acts of the prosecutrix either with the defendant or with other men. * * * the evidence is admissible, not for the direct purpose of impeaching her character, but for the purpose of discrediting her testimony relating to the use of force or violence by the defendant in accomplishing his purpose.' " People v. Pantages, 212 Cal. 237, 297 P. 890.

In the case at bar, the defendant testified that, when he woke up in the automobile he accused the prosecutrix of taking his money and threatened to complain against her, and it was for the jury, after hearing all the facts, to decide if there may not have been an ulterior motive for the prosecutrix rushing to phone the police and make this charge. In such a case we believe the court should be liberal in permitting cross-examination of the habits

and past conduct of the prosecutrix. See, People v. Keller, 227 Mich. 520, 198 N. W. 939; Goldman v. State, 128 Neb. 684, 260 N. W. 373.

We have reached the conclusion that, as in this case all of the events on which the alleged crime was based happened in the space of ·a little over half an hour, while they were alone, and are charged by the prosecutrix to have been committed by the defendant and are as positively denied by the defendant, the cross-examination of the prosecutrix was too narrowly restricted by the court, and it was prejudicial to exclude evidence of unchaste acts of the prosecutrix.

Under the record in this case, we conclude that the defendant did not have a fair and impartial trial, because he was too limited in attempting to prove the kind of woman he claimed the prosecutrix was. He should have been given full opportunity, as granted by so many other courts, to have proved, if he could, under the rules of evidence, the character of the woman making the charge against him.

The judgment is reversed and the cause remanded to the district court for a new trial.

REVERSED AND REMANDED.