# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1698

_____

United States of America

*Plaintiff - Appellee*

v.

Ezekiel Mitchell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 15, 2017
Filed: March 19, 2018
[Unpublished]

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

PER CURIAM.

A jury found Ezekiel Mitchell guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to 120

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

months' imprisonment. Mitchell thereafter filed a motion for a new trial, which the district court denied. Mitchell appeals, arguing that the district court (1) abused its discretion by denying his motion for a new trial, (2) abused its discretion when it admitted evidence from the show-up identification, and (3) violated his Sixth Amendment right to confront and cross-examine a witness against him when it admitted the 911 call. We affirm.

Mitchell and his girlfriend, Michelle Garcia, first met Faith McCombs on November 7, 2015, at a bar in Davenport, Iowa. After a dispute between Garcia and McCombs about Mitchell's purchasing drinks, McCombs left the bar. Garcia followed McCombs outside, grabbed her by the hair, and threw her to the ground. As McCombs fought back, Garcia yelled for Mitchell to assist her. Justice Hill, McCombs's ex-boyfriend, tried to break up the altercation, whereupon Mitchell stepped in and pulled out a gun. As Hill then ran from the scene, Mitchell struck McCombs in the head with the gun.

The fight having ended, Mitchell walked through the crowd of people that had gathered outside of the bar, approached two men, pointed his gun at each bystander, and asked, "Are you the guy?" Upon hearing their denials, Mitchell—still waving his gun—then began walking towards another group of bystanders, at which point one of the onlookers told Mitchell that Hill had left down an alley. Mitchell and Garcia then left the scene of the fight and started down the alley.

An onlooker had called 911 during the fight and reported the incident, providing the dispatcher with a description of the suspect's clothing and his physical attributes, and stating that the suspect had been waving a gun and had left down an alley.

Police officers responded to the call minutes later. As they proceeded down the alley they noticed a man matching the suspect's description walking with a

-2-

woman. Officers ordered the suspect, who was later identified as Mitchell, to stop. Mitchell complied. A pat down search of Mitchell produced nothing of evidentiary value. Because Mitchell appeared intoxicated, however, he was handcuffed and placed in the back of the police car.

Police attempted to stop Garcia, who was noncompliant and tried to get away but was ultimately arrested, searched, and found with a loaded .38 revolver in her sweatshirt pocket.

Police officers arranged a "show-up identification" for Mitchell. Two police cars were positioned to face each other approximately twenty-five yards apart. Mitchell was removed from the back of the police car and positioned next to one squad car while an officer from the other car shined a spotlight on him. Two witnesses stepped forward and identified Mitchell as the person with the gun from the bar fight.

Mitchell argues that the district court should have granted his motion for a new trial because the evidence was insufficient to sustain the jury's verdict. A district court may "grant a new trial [to a defendant] if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review the denial of a motion for a new trial for abuse of discretion. United States v. Carlson, 613 F.3d 813, 817-18 (8th Cir. 2010) (standard of review).

We find to be singularly unpersuasive Mitchell's contention that the evidence was insufficient to show that he had knowingly possessed a firearm. Five witnesses testified that Mitchell possessed a firearm. McCombs testified that Mitchell struck her with a gun during the fight. Hill testified that Mitchell pointed a gun at him during the fight. Two onlookers testified that they saw Mitchell walk through the crowd waving a gun and looking for Hill. Finally, Garcia testified that Mitchell had handed her a gun after the fight. The 911 call account provided a description of the

gun-carrying suspect. In a word, then, the evidence was sufficient to establish that Mitchell had knowingly possessed a firearm.

Mitchell next argues that the district court abused its discretion when it denied his motion in limine to exclude evidence from the show-up identification. See United States v. Collier, 527 F.3d 695, 699 (8th Cir. 2008) (standard of review).

Police officers are not limited to station house line-ups if there is "an opportunity for a quick, on-the-scene identification." United States v. King, 148 F.3d 968, 970 (8th Cir. 1998). Show-up identifications are "essential to free innocent suspects and to inform the police if further investigation is necessary." Id. Thus, even if the line-up is inherently suggestive, the line-up will be admissible as long as it is not "'impermissibly suggestive' _and_ unreliable." Id. (quoting Graham v. Solem, 728 F.2d 1533, 1541 (8th Cir. 1984) (en banc), applying Manson v. Brathwaite, 432 U.S. 98, 110-16 (1977)). Factors to consider when assessing reliability are "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." United States v. Hadley, 671 F.2d 1112, 1115 (8th Cir. 1982) (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).

Mitchell characterizes the line-up as impermissibly suggestive because he was the only person in handcuffs, was placed near a squad car, and had a light shined on him. We have previously held as not unduly suggestive a show-up identification in which a handcuffed suspect stood near a uniformed officer in front of a police car while a flashlight shined on his face. United States v. Pickar, 616 F.3d 821, 827-28 (8th Cir. 2010); see also United States v. Martinez, 462 F.3d 903, 911 (8th Cir. 2006) (holding that a show-up identification was not unduly suggestive when a suspect was driven back to the scene of the crime in a police car and stood handcuffed next to police officers while witnesses identified him from inside a building). Likewise here,

-4-

we conclude that Mitchell's show-up identification was not unduly suggestive, and we agree with the district court's finding that it did not present a substantial likelihood of misidentification.

Mitchell also argues that the show-up identification is unreliable because the two identifying witnesses were unfamiliar with him and "they had been drinking for a considerable amount of time." The record belies this contention, however, for both witnesses had the opportunity to observe Mitchell when he was walking through the crowd looking for Hill. At one point, Mitchell had come within five feet of them, and they were able to confidently identify him based on a distinctive outfit that he was wearing. Moreover, little time elapsed between the fight and the identification. The district court thus did not abuse its discretion in admitting the show-up identification.

Mitchell further contends that the court erred in admitting the 911 call because the call's contents were testimonial in nature and the caller did not testify, depriving Mitchell of his Sixth Amendment right to confront and cross-examine the witness. We review *de novo* Mitchell's constitutionally based objection. United States v. Brun, 416 F.3d 703, 706 (8th Cir. 2005) (standard of review).

The Confrontation Clause prohibits the "admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross examination." United States v. Clifford, 791 F.3d 884, 887 (8th Cir. 2015) (citing Crawford v. Washington, 541 U.S. 36, 59 (2004)). Witness testimony is not testimonial, however, when "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822 (2006); see also United States v. Brun, 416 F.3d at 707 (quoting State v. Wright, 686 N.W.2d 295, 302 (Minn. App. 2004)) (stating that "statements made during [a] 911 call, moments after the criminal offense and under the stress of that event, are not 'testimonial'").

Because the 911 call was made to enable police to identify and apprehend an armed, threatening individual, the caller's statements were not testimonial in nature and thus did not implicate the Confrontation Clause. Accordingly, they were admissible if they were otherwise in compliance with the Federal Rules of Evidence. See Brun, 416 F.3d at 707. The caller's statements were admissible either as a present sense impression or as an excited utterance. See Fed. R. Evid. 803(1)-(2). They were admissible as a present sense impression because the caller was describing an ongoing situation in real time, reporting that a gun-carrying man had left the scene of a fight and was proceeding down an alley. See Fed. R. Evid. 803(1); United States v. Dean, 823 F.3d 422, 427 (8th Cir. 2016) (noting that 911 calls that are placed with "sufficient contemporaneity" are admissible under the present sense impression hearsay exception). Moreover, because the caller had been witnessing a fight that had escalated to the point at which Mitchell presented a gun, his statements could also be admitted as an excited utterance. See Fed. R. Evid. 803(2); Brun, 416 F.3d at 707 (determining that a witness's 911 call to report a fight that had escalated to an assault was an excited utterance). The district court therefore did not err in admitting the testimony regarding the 911 call.

The judgment is affirmed.

_____